UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **RAMADA WORLDWIDE INC.**, a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>**PRMC, INCORPORATED**, a Virginia Corporation, and **ZULFIQAR KHAN**, an individual,<br><br>Defendants. | Civ. No. 15-3841 (KM) (JBC)<br><br>**OPINION** |

## KEVIN MCNULTY, U.S.D.J.:

### I. INTRODUCTION

The plaintiff, Ramada Worldwide Inc. ("RWI"), brought this action against PRMC, Incorporated ("PRMC") and Zulfiqar Khan ("Khan") for outstanding recurring fees, interest, attorneys' fees, and costs arising from a breach of a franchise agreement and guaranty.[1] Now before the Court is RWI's motion for

---

[1] Record items cited repeatedly will be abbreviated as follows

"Compl." = Complaint (ECF no. 1)

"Def. Answer" = Answer to Complaint and Counterclaim (ECF no. 13)

"Pl. Mot." = Brief in Support of Plaintiff Ramada Worldwide Inc.'s Motion for Summary Judgment as to the Fourth Count of Its Complaint Against Defendant Zulfiqar Khan Only, and Dismissing Zulfiqar Khan's Counterclaim With Prejudice (ECF no. 37)

"SMF" = Statement of Undisputed Material Facts (ECF no. 36-3)

"Fenimore Aff." = Affidavit of Suzanne Fenimore in Support of Plaintiff's Motion of Summary Judgment (ECF no. 36-4)

"Couch Cert." = Certification of Brian P. Couch, Esq. in Support of Plaintiff's Motion for Summary Judgment (ECF no. 36-5)

1

summary judgment on the Fourth Count of its Complaint and dismissing Khan's Counterclaim with prejudice, pursuant to Fed. R. Civ. P. 56. For the reasons stated herein, the motion is granted in part and denied in part.

## II. BACKGROUND

### A. Relevant Facts[2]

RWI "operates a guest lodging facility franchise system comprised of federally-registered [trademarks] (the "Ramada®[3] Marks"), as well as the distinctive Ramada System." (SMF ¶ 3) RWI is a Delaware corporation

---

| "Khan Dep." = | Videoconference Deposition of Zulfiqar Khan (Couch Cert. Ex. C) |
|---|---|
| "Def. Opp." = | Defendant[']s Answer and Objection [to] Plaintiff[']s Motion for Summary Judgment and Dismissal of Counterclaim (ECF no. 38) |
| "Pl. Reply" = | Plaintiff's Letter Reply Brief (ECF no. 39) |

[2] RWI submitted a Statement of Undisputed Material Facts, to which Khan has not responded. RWI asks that the Court consider the facts in its statement to be admitted for the purpose of summary judgment. (Pl. Reply 1–2)

If a party fails to address the other party's properly supported assertion of fact, the court may consider "grant[ing] summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e). Local Civil Rule 56.1(a) deems a movant's statement of material facts undisputed where a party does not respond or file a counterstatement. L. Civ. R. 56(a). A failure to dispute a party's statement of material facts, however, "is not alone a sufficient basis for the entry of a summary judgment." *See Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990) (holding that even where a local rule deeming unopposed motions to be conceded, the court was still required to analyze the movant's summary judgment motion under the standard prescribed by Fed. R. Civ. P. 56(e)); *see also Muskett v. Certegy Check Servs., Inc.*, Civ. No. 08-3975, 2010 WL 2710555 (D.N.J. July 6, 2010) ("In order to grant Defendant's unopposed motion for summary judgment, where, as here, 'the moving party does not have the burden of proof on the relevant issues, . . . the [Court] must determine that the deficiencies in [Plaintiff's] evidence designated in or in connection with the motion entitle the [Defendants] to judgment as a matter of law.'" (quoting *Anchorage Assoc.*, 922 F.2d at 175)).

I have therefore reviewed Khan's answer and counterclaim, opposition, and the entire case file, with an eye to assertions of fact that may be supported by the evidence of record.

[3] Although I have dispensed with the ® symbol throughout the remainder of this opinion, I note here that "Ramada" is a registered trademark.

2

headquartered in Parsippany, New Jersey. (*Id.* ¶ 1) PRMC is a Virginia corporation. (*Id.* ¶ 4) Zulfiqar Khan is a principal of PRMC. (*Id.* ¶ 5)

In December 2008, RWI and PRMC entered into negotiations "to allow PRMC to open a 120-room Ramada guest lodging facility" in Lumberton, North Carolina" (the "Facility"). (*Id.* ¶ 6) In March 2009, RWI terminated the negotiations, "because PRMC failed to pay the initial fee and failed to execute the Special Incentive section of the proposed franchise agreement." (*Id.* ¶ 7)

However, on August 26, 2009, RWI and PRMC entered into a franchise agreement (the "Agreement" or "Franchise Agreement") for the operation of the Facility. (*Id.* ¶ 8) Pursuant to section 5 of the Agreement, PRMC was obligated to operate the Facility as a Ramada guest lodging facility for a fifteen-year term. (*Id.* ¶ 10) Pursuant to section 7, section 18.1, and Schedule C of the Agreement, PRMC "was required to make certain periodic payments to RWI for royalties, service assessments, taxes, interest, reservation system user fees, and other fees (collectively, 'Recurring Fees')." (*Id.* ¶¶ 11–16) The Agreement also required PRMC to submit monthly financial reports to RWI and to allow RWI access to its books and records related to revenues that served as the basis for the Recurring Fees. (*Id.* ¶¶ 19–20) RWI could terminate the Agreement, pursuant to section 11.2, if PRMC "discontinued operating the Facility as a Ramada guest lodging establishment" or "lost possession or the right to possess[] the Facility". (*Id.* ¶ 21)

Khan guaranteed PRMC's obligations under the Agreement, effective as of the date of the Agreement (the "Guaranty"). (*Id.* ¶ 26) The terms of the Guaranty included Khan's agreement to "immediately make each payment and perform or cause [PRMC] to perform, each unpaid or unperformed obligation of [PRMC] under the [Franchise] Agreement," in the event of a default under the Agreement. (*Id.* ¶ 27) In addition, Khan agreed to pay attorney's fees and reasonable costs "incurred by RWI in enforcing its rights or remedies under the Guaranty" or Agreement. (*Id.* ¶ 28) Khan executed the Guaranty, and

3

understood that by signing the Guaranty, he would be responsible for payments due and owing under the Agreement. (*Id.* ¶¶ 29–30)

RWI "acknowledged the opening of the Facility, effective August 26, 2009, and further advised PRMC that it will be loaded into the Central Reservation System and live effective August 26, 2009." (*Id.* ¶ 9) Subsequently, in June and July 2010, RWI advised Khan by letter that PRMC owed $30,503.92 in Recurring fees to RWI. (*Id.* ¶¶ 31–32) Then, on or around November 1, 2010, PRMC "lost possession of the Facility," at which time PRMC still owed Recurring Fees to RWI. (*Id.* ¶ 33–34)

RWI has demanded from Khan payment of the outstanding Recurring Fees owed to RWI under the Agreement and the Guaranty. (*Id.* ¶ 35) "Khan owes Recurring Fees to RWI in the amount of $114,533.94 inclusive of interest," and, "[i]n total, RWI seeks $125,577.55, inclusive of Recurring Fees, interest, attorneys' fees and costs." (*Id.* ¶¶ 36–38)

### B. Procedural Background

On June 9, 2015, RWI filed the complaint in this action. In Count 4 of the Complaint, "RWI demands judgment against Khan for damages in the amount of all liquidated damages or actual damages and Recurring Fees due and owing under the Agreement, together with interest, attorneys' fees, and costs of suit." (Compl. ¶ 36) On July 10, 2015, Khan filed an answer to the Complaint and a counterclaim against RWI on behalf of himself and PRMC. (ECF no. 6) The clerk rejected that filing because a corporation must be represented by counsel, and directed Kahn to re-file his Answer and Counterclaim on behalf of himself only, if he was proceeding pro se. (ECF no. 7) On August 3, 2015, RWI filed its answer to Khan's Counterclaim. (ECF no. 8) On December 8, 2015, Khan refiled the Answer and Counterclaim on behalf of himself only. (ECF no. 13)

On December 9, 2015, at RWI's request, the Clerk of the Court entered default against PRMC for its failure to plead or otherwise defend. (ECF no. 11) On July 12, 2016, RWI moved for default judgment against PRMC only. (ECF

4

no. 21) On December 21, 2016, the Court administratively terminated RWI's motion for default judgment, without prejudice to renewal, reasoning that "there is little utility in a partial judgment, entered while the case continues" and "that the exploration of the merits in connection with the claims brought by and against Mr. Khan would illuminate the factors relevant to entry of a default judgment." (ECF no. 32)

On February 20, 2017, RWI filed its motion (ECF no. 36) for summary judgment on the Fourth Count of its Complaint and dismissing Khan's Counterclaim with prejudice, pursuant to Fed. R. Civ. P. 56. That motion is now before the Court.

### III. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. County of Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348 (1986). The opposing party must present actual

5

evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); *see also Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322–23).

A *pro se* litigant, such as Khan here, is ordinarily entitled to considerable leeway. *See Niblack v. Murray*, No. CV126910MASTJB, 2016 WL 4086775, at *1 n.1 (D.N.J. July 29, 2016) (citing *Pratt v. Port Auth. of N. Y. & N.J.*, 563 F. App'x 132, 134 (3d Cir. 2014) ("[B]ecause [the plaintiff] is proceeding pro se, we will construe his brief liberally."); *Marcinek v. Comm'r*, 467 F. App'x 153, 154 (3d Cir. 2012) (holding that courts are "under an obligation to liberally construe the submissions of a pro se litigant")). *See generally Haines v. Kerner*, 404 U.S. 519 (1972). I have construed Khan's answer and counterclaim, and his opposition to summary judgment in the liberal spirit of *Haines*.

## IV. DISCUSSION AND ANALYSIS

### A. Khan's Liability for Breach of the Guaranty (Count 4)

RWI first seeks summary judgment on Count 4 of the Complaint. There, RWI alleges that Khan is liable to RWI for the overdue Recurring Fees owed to RWI by PRMC. (Compl. ¶¶ 33–36) I will grant in part RWI's motion for summary

6

judgment on Count 4, and grant leave to file a motion for partial summary judgment disposing of remaining issues.

Under New Jersey law,[4] "[i]n order to prove liability on a guaranty, a plaintiff must demonstrate: (1) execution of the guarantee by the guarantor; (2) the principal obligation and terms of the guaranty; (3) lender's reliance on the guaranty; (4) default by principal obligator; (5) written demand for payment on the guarantee; and (6) failure of the guarantor to pay upon written demand. *Knights Franchise Sys., Inc. v. First Value RC, LLC*, No. CV134976WHWCLW, 2017 WL 1170849, at *3 (D.N.J. Mar. 29, 2017) (citing *U.S. on Behalf of Small Bus. Admin. v. DelGuercio*, 818 F. Supp. 725, 727–28 (D.N.J. 1993)).

### 1. Elements 1–4 and 6 of Guaranty liability and Khan's Opposing Arguments

Here, RWI has clearly established five of those six elements. I discuss them here, reserving discussion of element no. 5 until later.

*Element 1*: Khan admits to executing the Guaranty, and the executed Guaranty is in the record. (SMF ¶ 26; Def. Answer ¶ 6; Fenimore Aff. Ex. D; Couch Cert. Ex. B ¶¶ 3–4)

*Element 2*: The terms of the Guaranty are unambiguous[5] and require that "[u]pon default by [PRMC] and notice from [RWI]," Khan "will immediately make each payment and perform or cause [PRMC] to perform, each unpaid or

---

[4] The Agreement's choice of law provision states that the Agreement "will be governed by and construed under the laws of the State of New Jersey, except for its conflicts of laws principles." (Fenimore Aff. Ex. B, Section 17.6.1) The Guaranty states that "Section 17 of the Agreement . . . applies to this Guaranty." (*Id.* Ex. D) RWI assumes that New Jersey law applies to its breach of guaranty claim (Pl. Mot. 5 n.3), and Khan does not object.

[5] "'[W]here the terms of a contract are unambiguous . . . their construction is a question of law appropriate for summary judgment.'" *Days Inn Worldwide, Inc. v. Khan Grp., LLC*, No. CIV. 11-4575 KM, 2014 WL 956105, at *4 (D.N.J. Mar. 12, 2014) (quoting *W.B. v. Matula*, 67 F.3d 484, 497 (3d Cir.1995) (citation omitted), *overruled on other grounds by A.W. v. New Jersey Public Schools*, 486 F.3d 791 (3d Cir. 2007). "The initial determination of whether terms are ambiguous is itself a question of law." *Id.*

7

unperformed obligation of [PRMC] under the [Franchise] Agreement." (Fenimore Aff. Ex. D)

*Element 3*: RWI has demonstrated its reliance on the Guaranty. The Guaranty expressly states that its purpose is "[t]o induce [RWI], its successors and assigns . . . to sign the Franchise Agreement" with PRMC. (Fenimore Aff. Ex. D)

*Element 4*: It is not disputed that PRMC defaulted on its obligations under the Agreement. First in June and then again in July 2010, RWI advised Khan by letter that, as of June 21, 2010, PRMC owed $30,503.92 in Recurring fees to RWI. (SMF ¶¶ 31–32; Fenimore Aff. Ex. E, Ex. F) PRMC still owed Recurring Fees to RWI when PRMC "lost possession of the Facility."[6] (*Id.* ¶ 33–34; *see also* Khan Dep. 49:16–24)

*Element 5*: This element is discussed in Section IV.A.2, *infra*.

*Element 6*: "Khan has not paid RWU the outstanding Recurring Fees due under the Franchise Agreement and Guaranty, nor has he paid any interest on these items." (Fenimore Aff. ¶ 34) Khan admits that neither he nor PRMC paid Recurring Fees or "any sums [t]o RWI since the termination of the Franchise Agreement," although he disputes the amount owed. (Couch Cert. Ex. B ¶¶ 5–6)

Khan's arguments in opposition are meritless.

First, Khan offers a bare allegation that "[t]here are disputes as to the charges claimed by RWI." (Def. Opp. 2) The conclusory nature of Khan's allegation aside, the precise amount owed is immaterial to the liability question where, as here, Khan admits that some amount is owed. (Of course, a genuine dispute over the amount owed will be relevant to the question of damages.)

---

[6] RWI states that PRMC lost possession of the Facility on or around November 1, 2010. (SMF ¶ 33) However, at his deposition, Khan testified that he thought that PRMC lost possession of the Facility to a receiver in 2011, not 2010. (Khan Dep. 44:22 – 45:2) For the purposes of establishing liability, the discrepancy does not matter, as all parties agree that at the time PRMC lost possession of the Facility, PRMC owed fees to RWI.

8

Second, Khan argues that "RWI has obligations to fulfill under the franchise agreements." (*Id.*) Khan does not specify what obligations under the Agreement RWI failed to fulfill. In fact, it appears from Khan's deposition testimony that he is not referring to any particular obligations; instead, Khan believes that RWI failed to act in accordance with his expectations of RWI as a franchisor.[7] Even if Khan could demonstrate that RWI breached one of its obligations as franchisor, Khan fails to explain the alleged relevance to the issue of whether Khan breached his obligations under the Guaranty.[8]

Third, Khan generally asserts that, in future hearings, he would be able to produce witnesses to support his position (Def. Opp. 1) ("[U]pon information and belief there would be witnesses including but not limited to the current and past employees of RWI."). However, Khan had the opportunity to conduct depositions; in fact, the fact discovery deadline was extended to afford Khan an additional "opportunity to conduct depositions, should he so choose." (Nov. 3, 2016 Letter Order, ECF no. 31) Khan has not produced any witnesses, and the mere hope that witnesses might be procured in the future is insufficient to generate a genuine issue of material fact.

Fourth, at his deposition, Kahn asserted that the fees RWI alleges are owed had "all been cleared." (Khan Dep. 29:12-22) He states that "a couple of employees of Ramada" that he "dealt with . . . kind of gave me the idea that,

---

[7] When asked, "Can you tell me specifically what sections of the franchise agreement you believed Ramada breached?", Khan replied:

> Not exactly a particular section. But in general, it is the obligation of a franchisor to provide with certain services. And that is my understanding and experience, being in the hotel business for the last 25-plus years.
>
> And in my view, those obligations were not properly fulfilled, if that is the correct word, or applied in my case. That's the essence of it.

(Khan Dep. 77:10-19)

[8] For example, Khan does not cite any evidence that RWI's (unidentified) obligations were conditions precedent to PRMC's—and under the Guaranty, Khan's—obligations to pay the Recurring Fees.

9

'Don't worry about it. It's all going to be written off.'" (*Id.* at 37:4–7) Khan could not recall those employees' names or whether they were "director[s] of operations," "marketing people," or in "franchise development." (*Id.* at 37:17–22, 38:8–13) Nor did Khan "ever get a writing or an agreement of any kind from Ramada" stating that he would not be responsible for the fees. (*Id.* at 38:14 – 21) In his opposition, Khan does not repeat this unsupported claim that RWI employees had assured him that the fees would be "written off."

In short, I will grant RWI's motion for summary judgment in part, as to the issues identified in this subsection.

### 2. Element 5 of Guaranty liability

That still leaves Element 5 of Guaranty liability: "(5) written demand for payment on the guarantee." *Knights Franchise, supra; DelGuercio, supra.* This element must be understood in the context of the explicit wording of the Guaranty itself, which states that it is triggered by "default by Franchisee [PRMC] and notice from you [RWI]." (Guaranty, second paragraph.) Here, the proofs seem incomplete, although they might be supplemented.

RWI attaches two letters as evidence. On June 21, 2010, RWI wrote to Khan to inform him of PRMC's non-conformance with its obligations and failure to pay an amount due of $30,503.92. (Fenimore Aff. Ex. E) On July 30, 2010, RWI wrote to Khan again to inform him of PRMC's continuing non-conformance and failure to pay the amount due. (Fenimore Aff. Ex. F)

These letters, however, are problematic. They state, in so many words, that they do *not* constitute notice of default, even as to PRMC, let alone its guarantor:

> The Agreement allows us to send you a Notice of Default because of your violation of the Agreement. However, as a gesture of good will and in the anticipation that you will timely remedy these situations, we will not do to at this time. Please know that if after thirty (30) days from the date of this letter, you remain in violation of the terms of the Agreement, we will have no alternative but to send you a Notice of Default. If a default occurs, your access to the central reservation system may be suspended and the Agreement will be subject of termination.

10

In addition, the Letters are not explicitly addressed to Mr. Khan *in his capacity as guarantor,* and do not explicitly "demand . . . payment on the guarantee." *Knights, supra.*

I therefore deny RWI's motion for summary judgment on this element of its claim under the Guaranty.

I will, however, authorize a second, short motion for summary judgment. This may include proofs of the necessary notices of default or demands for payment. If such exhibits are unavailable, RWI may wish to brief the question of whether the requirement may be excused in the absence of prejudice, or if it may be cured, or if the civil complaint in this action may be deemed an adequate substitute.[9] But the issue has not been fairly presented, and I therefore will not decide it in this context.

Issues relating to damages will be considered if and when RWI establishes this essential element of its claim. If so, RWI may elect to rest on its current submissions as to damages.

### B. Khan's Counterclaim

The essence of Khan's Counterclaim is that in 2009, Khan paid the franchise fee, but RWI wrongfully delayed bringing the Facility "on line," *i.e.,* loading it into the Central Reservation System for RWI hotels. (Def. Answer ¶ 7) The alleged delay resulted in PRMC's losing revenues in excess of $10,000. (*Id.* ¶¶ 5, 7, 13) The Counterclaim asserts several theories for recovery (breach of

---

[9] *See Anabarasan v. 53-54 Palisades Hudson Assocs., LLC,* No. A-3606-10T4, 2012 WL 1108418, at *4 (N.J. Super. Ct. App. Div. Apr. 4, 2012) ("Defendants have not asserted any basis for excusing their performance under the Guaranty. They do not contend on this appeal that Palisades has repaid the money it owes to plaintiff. Nor have they asserted any prejudice flowing from plaintiff's failure to give the required notice. Accordingly, plaintiff's failure to give the required notice only delays his ability to obtain judgment on the Guaranty, it in no way relieves defendants of their payment obligation."); *Pleasantville Mut. Loan & Bldg. Soc. v. Moore,* 70 N.J.L. 306, 307, 57 A. 1034, 1034 (1904) (Declining to adopt requirement of notice of default, and noting that "[e]ven in those jurisdictions where notice of default of the principal debtor is held to be necessary, failure to give notice is not of itself sufficient to discharge the guarantor.").

11

fiduciary duty, negligence, misrepresentation, breach of the implied covenant of good faith and fair dealing), but all share the identical nucleus of factual allegations.

RWI argues that Khan's Counterclaim cannot survive summary judgment. In passing, I note that Khan does not appear to have adduced evidence sufficient to raise a triable issue of fact.[10]

There is, however, a more fundamental problem. Mr. Khan, *pro se*, is attempting to pursue a Counterclaim that belongs to PRMC, a corporation. (Pl. Mot. 12) "Corporations . . . may appear in federal court only through counsel." *Goldstein v. Roxborough Real Estate LLC*, 677 F. App'x 796, 798 (3d Cir. 2017) (citing *Rowland v. Cal. Men's Colony*, 506 U.S. 194, 202, 113 S. Ct. 716 (1993); *Simbraw, Inc. v. United States*, 367 F.2d 373, 374 (3rd Cir. 1966) (per curiam); *United States v. Hagerman*, 545 F.3d 579, 581 (7th Cir. 2008)). Any tort or contractual duty owed by RWI was owed to PRMC, not to Khan personally. For this reason alone, Khan is not entitled to judgment on his Counterclaim as a matter of law.

---

[10] RWI states that, in March 2009, it terminated the initial "negotiations with PRMC to open the Facility, because PRMC failed to pay the initial fee and failed to execute the Special Incentive section of the proposed franchise agreement." (SMF ¶¶ 6–7) That contention is backed by evidence. (Fenimore Aff. ¶¶ 8–9, Ex. A). According RWI's March 5, 2009 letter to Khan, Khan's initial fee check was returned for non-sufficient funds. (Fenimore Aff. Ex. A) Khan has not produced any evidence that he paid the franchise fee at that time. Thus, no reasonable fact finder could conclude that the "delay" caused by termination of the original negotiations is attributable to any wrongdoing on RWI's part.

Subsequently, on August 26, 2009, RWI did enter into the Agreement with PRMC to open the Facility. (Fenimore Aff. ¶ 10, Ex. B). RWI acknowledged the opening of the Facility, effective August 26, 2009, by letter on that same date, and "further advised PRMC that it will be loaded into the Central Reservation System and live effective August 26, 2009." (Fenimore Aff. ¶ 11, Ex. C). Khan himself signed for and acknowledged RWI's August 26, 2009 correspondence that same day. (*Id.*) No reasonable fact finder could conclude, based on the evidence in the record, that RWI wrongfully delayed—if at all—the activation of the reservation system to PRMC's detriment.

Accordingly, there is no genuine issue of material fact for trial as to Khan's Counterclaim and RWI's motion for summary judgment to dismiss the Counterclaim is GRANTED.

## V. CONCLUSION

For the foregoing reasons, RWI's motion for summary judgment (ECF no. 36) on Count 4 of its Complaint is GRANTED IN PART. RWI's motion for summary judgment on Mr. Khan's Counterclaim is GRANTED. As stated above, a second motion for partial summary judgment on remaining issues is authorized; as to damages, if appropriate, RWI may rest on its current submissions.

A separate Order accompanies this Opinion.

Dated: August 25, 2017

_____
HON. KEVIN MCNULTY, U.S.D.J.